STRYKER v. BOARD OF COM'RS OF GRAND COUNTY, COLO.

(Circuit Court of Appeals, Eighth Circuit. November 2, 1896.)

No. 737.

1. JUDGMENTS ON COUNTY WARRANTS—LEVY OF TAX—MANDAMUS TO COMMISSIONERS.

Neither section 8 of the Colorado statute of March 24, 1877 (Laws Colo. 1877, p. 219), nor the statute of April 28, 1887 (Laws Colo. 1887, p. 240), entitles the holder of a judgment against a board of county commissioners, recovered upon warrants issued for ordinary county expenses, to compel such board, by mandamus, to levy a special tax to pay such judgment; but the most that such a creditor can demand is that a tax shall be levied each year to the full amount of the limit fixed by statute for taxation for ordinary county expenses, until his judgment is paid. Sanborn, Circuit Judge, dissenting.

2. FEDERAL COURTS—CONSTRUCTION OF STATE STATUTES—STATE DECISIONS.

The circuit court of appeals will not reverse its ruling upon the interpretation of a state statute, made in a former case, decided before there had been any adjudication upon the subject by the state courts, in deference to a contrary ruling made by a court of the state, not its highest judicial tribunal, which does not commend itself as sound. Sanborn, Circuit Judge, dissenting.

In Error to the Circuit Court of the United States for the District of Colorado.

This was a proceeding by mandamus to compel the levy of a tax to pay a judgment which was recovered by John W. Stryker, the plaintiff in error, against the board of county commissioners of the county of Grand, state of Colorado, in the circuit court of the United States for the district of Colorado. The petition filed for the purpose of obtaining the writ contained, in substance, the following allegations: That on June 1, 1893, John W. Stryker, the petitioner, recovered a judgment against the said board of county commissioners in the sum of $2,856.72, which remained wholly unpaid; that said judgment was recovered on 49 county warrants which were duly issued by the county of Grand, between October 1, 1885, and April 5, 1887, and were thereafter presented for payment and registered pursuant to the laws of the state of Colorado, between October 6, 1886, and May 21, 1887; that said warrants were issued and registered as representing amounts lawfully due to divers persons for services rendered by them as superintendent of schools, superintendent of election, and county commissioners, also for juror's fees, for services of sheriff, clerk of court, county clerk, county judge, and printing done for said county; that said warrants constituted a part of the general expenses of the county, and were payable out of the ordinary county revenue fund of said county; that said warrants had been duly assigned to the petitioner; that under the laws of the state of Colorado no execution could be issued upon said judgment against the county, and that the same could only be paid by the levy of a tax upon the taxable property of the county, or by the issuance of a warrant upon the ordinary county revenue fund; that under the laws of the state no warrant could be issued to pay said judgment, unless at the time of drawing the warrant there was sufficient money in the county treasury to pay the same; that said county of Grand was insolvent; that there were no moneys in the county treasury with which to pay the petitioner's judgment, and that other warrants had already been drawn in anticipation of the collection of taxes already levied; that the board of county commissioners had power and authority, and that it was their duty, upon being requested so to do, to levy a tax to pay the petitioner's judgment; that such request had been made, and that the said board, neglectful of its duty, had refused to levy a tax or to provide in any way for the payment of said judgment.

The aforesaid petition was treated as an alternative writ of mandamus, and thereupon the board of county commissioners filed an answer or return thereto. Said answer, omitting the preliminary parts thereof, which contained admissions of many facts stated in the petition, was in the words and figures following:

"Defendant denies that the judgment recited in said petition is now, or ever was, a valid and subsisting judgment against the defendant, and avers the fact to be that no right of action had, at the commencement of the said suit in which said judgment was obtained, or at any time prior or subsequent to or at the time said judgment was obtained, accrued to the petitioner herein, or to any person whomsoever, upon the warrants upon which said action was predicated and said judgment obtained; and further avers that in the complaint in the original action it was not alleged, nor did it appear therefrom, nor was it in fact shown or made to appear, that the funds out of which the warrants therein set forth as the foundation of the plaintiff's cause of action could be paid had been collected, or that sufficient time had elapsed to enable such funds to be collected in the mode provided by the laws of the state of Colorado, or that the defendant had in any way failed, neglected, or refused to apply any means provided by law for the collection of such funds or the payment of such warrants.

"Defendant denies that the said warrants referred to in the petition, and upon which the judgment sought to be enforced in this action was obtained, or any of them, represented or were issued for valid debts and obligations of the said county of Grand, as amounts justly due or owing by said county to the several persons or officers mentioned in said complaint, or any of them, for services or otherwise; and avers the fact to be that the said services of the said officers and persons, and of each and every of them, were rendered and performed with the understanding and agreement that, after their respective accounts therefor had been audited and allowed, they, and each and every of them, would accept in payment thereof

the said warrants, corresponding in amount, respectively, to the several amounts so audited and allowed, and that each and every of the said holders of said warrants accepted the same in payment of their said respective demands, with full knowledge and under the agreement that the said warrants would be paid only in the order of their registration, and not until the money could be raised through such means as had been or might thereafter be provided by law for the collection of revenues; and the said holders, and each and every of them, well knew, and accepted in payment of their several demands the said warrants or orders, respectively, with the knowledge, that at the time of the presentation thereof there was no money in the treasury of said county out of which the same could be paid, and that there were a large number of warrants or orders theretofore issued and registered which were entitled to precedence of payment before the said warrants or orders by them respectively accepted and presented could be paid; and the said holders then and there well understood and knew that the whole duty and power of the defendant, the said board of county commissioners, in the premises, was to levy such taxes as they might by law be authorized to levy, and to that extent provide for the collection of funds for the payment of said warrants or orders in the order of their registration, as well as for the payment of the current expenses of the said county.

"And this defendant avers that it has not at any time, or to any extent, or in any particular or respect, neglected, failed, or refused to faithfully perform and fulfill the duty so imposed upon it, but, on the contrary, has, in every year, levied the highest rate of taxation which it was by law authorized and empowered to levy for such purposes.

"Defendant denies that the said warrants or orders, or any of them, constituted a part of the general expenses of said county, but avers that the said warrants constituted a part of the general indebtedness of said county, to be paid as might be provided by law for the payment of such outstanding or floating indebtedness.

"Defendant denies that under and by virtue of the laws of Colorado the said judgment in favor of the petitioner can only be paid, or be paid at all, by the levy of a special tax, and avers that under said laws it is not the duty of the defendant, nor has it the power or authority, to levy any such special tax, or in any way or by any means give preference to the said judgment creditor, and the holder of said warrants upon which said judgment was obtained, by the payment thereof before warrants or orders previously registered have been called in or canceled, or by any payment otherwise than in the order of the registration of such warrants or orders.

"Defendant avers that the said judgment has not at any time, by the petitioner or any person, been submitted to it for audit or allowance, and that no demand for the issue of a warrant in payment thereof has ever been made; that the defendant has not determined, and has not been called upon to determine, as to whether or not it may lawfully issue a warrant in payment of said judgment, but defendant denies that either said judgment or any warrant which may be issued in payment thereof is payable out of the ordinary county fund of said county of Grand, and avers that said judgment or warrant, like the warrants upon which said judgment was obtained, is payable only out of the fund provided by law for the payment of the outstanding or floating indebtedness of said county.

"Defendant admits that the said county of Grand is insolvent, and that there are no moneys in the treasury of said county with which to pay said judgment, and admits that other warrants have already been issued against and in anticipation of the collection of taxes already levied; but defendant denies that it is absolutely or at all inhibited or prevented from drawing or issuing a warrant in payment of said judgment, and avers that it has power and authority, upon the satisfaction of said judgment and the surrender and cancellation of the warrants on which it is based, to draw and issue in payment thereof a warrant on the redemption fund for 'Ordinary County Revenue Fund Warrants,' which said warrant, when so drawn and issued, will be entitled to registration, and payment in the order of its registration, as provided by law. And defendant avers that the issue of such a warrant or the payment in their proper order out of said 'Redemption Fund,' as it shall be collected, of the warrants upon which said judgment was obtained, are the only proper and legal and just methods provided by law for the payment or satisfaction of such judgment.

"Defendant denies that it has, or ever had, the power or authority, or that it ever was· or became the duty of defendant to levy or cause to be levied or assessed any special tax for the payment of said judgment, or any part thereof, or any tax other than the tax provided by law for the payment and redemption of outstanding warrants and other floating indebtedness; and defendant avers that from year to year it has annually levied such tax to the extreme limit authorized by law, and the funds thereby collected have been exclusively appropriated. to the payment of such outstanding warrants and indebtedness, in the manner pointed out by statute.

"Defendant denies that the petitioner at any time requested defendant to pay or discharge the said judgment, or to take any steps (except as hereinafter set forth) to pay or discharge the same, in compliance with the provisions of the statutes of Colorado or otherwise, or to provide (except as hereinafter set forth) for the payment or settlement of said judgment, or any part thereof.

"Defendant avers that on the fifth day of December, A. D. 1893, after the annual appropriation resolution for the year 1894 and the annual levy of taxes for the year 1894 had been made, and after the last meeting of the defendant for the year 1893 had been held, the petitioner, by his attorneys, addressed, by mail, to the defendant, in the care of its clerk, a peremptory demand that it levy or cause to be· levied a special tax on the taxable property of said county for the purpose of paying and discharging said judgment, which said demand was laid before the defendant at its first meeting after the receipt thereof, to wit, on the first Monday in January, 1894, when, under the laws of Colorado, it was beyond the power and authority of the defendant to increase or change the levy of taxes for that year.

"Defendant further says that, although, prior to July 7, 1893, power and authority was conferred upon it by law to pay judgments by the issue of interest-bearing bonds in satisfaction thereof, and though it hath always been the law that judgments might be paid by warrants, and though all demands and claims against said county must, by law, be presented to the defendant for audit and allowance before the same can be paid, yet the petitioner has never presented said judgment for allowance, hath never expressed or intimated his willingness or desire to accept bonds in satisfaction thereof, hath never requested that a warrant issue therefor, and hath never, at any other time than that above recited, made any request or demand of the defendant concerning said judgment, and then only the peremptory demand above set forth.

"Defendant further avers that in one week after the date of said demand, and in less than one week after the same was received by the clerk to whom it was addressed, and before it was possible for petitioner to know whether or not any action had or would be taken in reference thereto, the petitioner instituted this action; and before it was possible for defendant to have complied with said demand, if it had been willing so to do, yet, because of its failure so to do, procured the alternative writ of mandamus issued herein. And defendant avers that at the time of the institution of this action no right of action had accrued to petitioner upon said judgment to have, claim, or demand the relief prayed for herein, or any relief. ·

"Defendant denies that it has at any time been, or is now, neglectful of its obligation to the petitioner, or to any creditor of said county of Grand, or to any person; denies that the failure to pay said judgment arose from any intention or design to deprive the petitioner of any moneys to which he might be entitled, or is due to any neglect on the part of the defendant; and alleges that the defendant has at all times levied all the taxes it was by law authorized to levy for the payment ·of the indebtedness of said county in the manner provided by law, and that it is·now, and always has been, willing to levy any lawful tax which may be authorized (due regard being had so far as the same is intrusted to the discretion of the defendant, as well as to the interests of taxpayers and citizens of said county, as to the rights of creditors).

"Further answering, this defendant alleges that there are now pending in several courts, to wit, in this court, in the district court in and for the county of Clear Creek; in the state of Colorado, in the court of appeals of said state of Colorado, and in the district court in and for the county of Arapahoe, in said state of Colorado, four several actions, in addition to this action, of the same nature, seeking the same relief, founded upon similar judgments, obtained on similar warrants

or orders, and differing from this and from each other only as to amounts and the parties plaintiff; that there are also pending in the supreme court of Colorado and in the county court of Grand county, in said state, two other actions against the defendant herein, wherein the plaintiffs seek, on warrants similar to those described in the petition herein, to obtain like judgments, which will be entitled to like remedies for their enforcement; that the moneys sought to be recovered in said actions and paid by the levy of special taxes exceed the sum of twenty-five thousand dollars; and that, should the several courts in which the said actions are pending, not only command the levy of such special taxes, but undertake to fix the rate of taxation, such action will, from the nature of the case, from the disparity in amount of the several judgments whose payments it is thus sought to enforce, from the different degrees of importance naturally attached by different judges to some portion or another of the same state of facts, and the natural diversity of opinion thereby produced, necessarily result in a gross inequality of payment, even as among those who are the beneficiaries of such action.

"Defendant further states that the outstanding warrants of the said county of Grand, including those upon which the several actions above mentioned and this action are founded, exceed in the aggregate the sum of sixty thousand dollars, exclusive of interest; and that of said warrants those which were presented for payment and duly registered prior to any of the warrants upon which the judgment in favor of the petitioner was obtained, amount to the sum of ten thousand dollars, exclusive of interest; that under the law of Colorado the first registered warrants are entitled to precedence of payment, and the petitioner, when he took the warrants he sued on, and the several persons who accepted them in payment for services rendered, at the time of such acceptance and when such services were rendered well knew and understood that said warrants could not and would not be paid until those theretofore presented for payment and registered had been fully paid off and discharged; and the holders of the said prior registered warrants took, accepted, and received the same upon and with the understanding and agreement that the defendant would carry out in good faith the agreement provided for by law on its part, and would provide for the payment of such warrants in full, before any payment whatever was made upon petitioner's warrants, or any warrants subsequently registered.

"Defendant further states that it is without power or authority to pay or to refuse to pay, or to direct the payment or nonpayment or order of payment, of any warrant by it issued; that under the law of Colorado the treasurer of said county has the collection, custody, and disbursement of the moneys of the county, and that he alone is authorized to determine, in the first instance, the order in which, under the provisions of the law, any warrant should be paid.

"Defendant further states: That under the laws of Colorado it has power and authority, and it is made its duty, to levy taxes in addition to taxes for state purposes as follows: For the ordinary county revenue fund, whatever amount (and no more than) may be necessary to pay the ordinary current expenses of the county; for the support of schools, not less than two mills and not more than five mills on every dollar of the taxable value of the property subject to taxation in the county; for the support of the poor, not more than three mills on every such dollar; for road purposes, not more than seven mills on every such dollar; for unforeseen contingencies, not more than three mills on every such dollar; and for the special fund for the redemption and payment of outstanding and unpaid warrants, not more than five mills on every such dollar. That the taxes so levied can, under the provisions of said laws, be appropriated and used when collected only for the purposes for which they were levied; and that the only fund authorized by law for the payment of outstanding warrants is that derived and to be derived from the levy for said special fund, which can only be used for the payment and redemption of such warrants in the order of their registration.

"Defendant states that by the laws of Colorado, and within the limits above mentioned, discretionary power is conferred upon the defendant to levy and assess the taxes to be collected in said county of Grand, and that additional power and authority is conferred upon it to levy, in its discretion, a special tax to be applied to the payment and satisfaction of judgments against the county; but defendant avers that it would be an unwarrantable, unjust, and perverted exercise of such discretion to levy a special tax for the payment of a judgment obtained upon county warrants or orders, payment of such warrants having been, as aforesaid,

otherwise provided for, and the effect of such action being to give to the holders of said warrants an undue and improper preference right of payment not contemplated at the time said warrants were issued and accepted.

"Defendant denies that by writ of mandamus or otherwise issuing out of this court, or any court, the defendant may be lawfully commanded or compelled to levy, assess, or collect any tax upon the taxable property of the said county of Grand for the purpose of paying the judgment recited in the petition, and alleges the fact to be that this defendant alone is authorized, in its discretion, to determine as to whether such tax or any tax shall be levied, assessed, and collected, and as to what the rate of taxation shall be, and as to what purpose and payments the same shall be applied when collected.

"Further answering, this defendant alleges that the utmost limit of taxation which can reasonably be levied, and which can be hoped to be collected, in said county of Grand, is, and has for many years been, barely sufficient to pay the ordinary and necessary current expenses of the county; that the said county is, in a measure, isolated; that it has no rail communication with other parts of the state; that it is traversed by high mountain ranges, and so distant and inaccessible as to be unable to compete in the general markets with other counties having inferior natural advantages and resources; that a very large portion of its indebtedness, including a portion of that due to petitioner, was incurred in the development and improvement of, and in the county management of, a very fertile and desirable tract of country, which at the time such expenditures were made and such indebtedness incurred was believed to be a part of said county of Grand, and from which it was reasonably and properly expected that a large portion of the revenue to be appropriated to the payment of said indebtedness would be raised; but it was so determined by a court of competent and final jurisdiction, to wit, by the supreme court of the state of Colorado, that said tract of country was a part of another county, to wit, of the county of Larimer, and that this defendant had no power or authority to levy any tax therein, or otherwise to provide from the revenue thereof for the payment of the indebtedness incurred therein. So that, with a debt greatly increased from acting on the belief that said tract of country was a part of the county of Grand, and with resources greatly diminished by the determination that said belief was without foundation in fact, the county of Grand cannot, in its present condition, provide in any way other than in the mode prescribed by law for all creditors for the payment of the judgment due petitioner, and the defendant could not, without increasing the burden of taxation beyond what the taxpayers can pay, and without great injustice to other creditors, whose claims are equally meritorious with that of plaintiff, and whose demands are equally insistent, levy a special tax for the payment of the judgment of petitioner or any part thereof.

"Defendant, further answering, alleges that the total valuation of the taxable property of the county of Grand is $296,886 (a comparatively small portion of which is income-producing property); that the outstanding valid, interest-bearing indebtedness of the county amounts to the sum of $60,000, more or less, the annual interest charged on which is about the sum of $6,000; that the annual current expenses of the county, necessary for the maintenance of the county government, amount to about the sum of $6,000; that the real estate in said county is mortgaged by the owners thereof to about seventy-five per cent. of the total assessed valuation thereof, which said mortgage indebtedness bears interest at various rates from ten to twenty per cent. per annum; that heretofore there has been annually collected not more than ninety per cent. of the total tax levied, and that under present depressed business conditions, which bear with particular severity upon detached and sparsely settled communities such as compose the county of Grand, the percentage of uncollected and uncollectible taxes will, as the defendant believes, be increased, rather than diminished; that the scattered population, the low rate of valuation, the higher wages, and the larger size of the districts require the levy of taxes for the maintenance of the public schools in the several districts at much higher rates than are necessary in other more favored localities.

"In view of all which facts, and with careful consideration of all the interests intrusted to their charge, the defendant, the said board of county commissioners of the said county of Grand, believed it to be inexpedient to levy, and impossible to collect, in addition to the state and school district taxes, more than the county taxes above mentioned; that the necessary county expenses are not proportion-

ately reduced by the low valuation of the property in the county, and have actually been increased to much more than they should have been by the protracted and expensive litigation into which the county has been forced to enter, so that, with the low valuation, the rate of taxation has necessarily been higher, and the burden imposed upon the individual taxpayer correspondingly greater and more onerous; that heretofore the defendant has been able to levy the highest rate allowed by law for the payment of outstanding warrants, and this rate it hopes to be able to continue to levy, and will do so, if, in the judgment of the defendant, the burden upon the taxpayers is not thereby unreasonably increased; and the said tax, when collected, will be so appropriated and paid to the several creditors of said county of Grand as the law shall direct, and as the rights of said creditors respectively shall require.

"And this defendant alleges that the levy of a special tax at this time for the express purpose of paying the judgment of petitioner, or any part thereof, or any interest thereon, or any costs, would be (if at all permissible) a gross abuse of the power, authority, and discretion conferred on this defendant by law.

"And, having fully answered, defendant asks to be hence discharged with its costs."

Subsequently, the board of county commissioners amended its answer by adding thereto the following additional averment:

"Further answering, the defendant states that at all times and every year its predecessors and itself have levied all the taxes at the highest rate authorized by law for the payment of outstanding warrants and indebtedness, but particularly both prior and subsequent to the commencement of this action, and since the passage of the act of 1893 it has levied in each year five mills on every dollar of the assessed valuation of the property of Grand county for a special fund for the redemption and payment of outstanding and unpaid warrants, and that all of the moneys collected under and by virtue of said several levies have been strictly and exclusively and solely appropriated to the payment of outstanding warrants in the order of their registration, giving preference to such as were first presented for payment and payment refused for want of funds in the treasury wherewith to pay them; that there are yet outstanding and unpaid and registered in compliance with the provisions of law, before the 6th day of October, 1886, and before any of the warrants referred to in plaintiff's complaint were presented for payment, warrants of Grand county amounting in the aggregate to the sum of ten thousand dollars, exclusive of interest, which, under the laws of Colorado, are entitled to payment before any of the warrants upon which the plaintiff's judgment is founded or the judgment itself can be paid."

Thereafter the petitioner below filed a demurrer to the foregoing answer, which was overruled, and the petition for a writ was thereupon dismissed. The petitioner then sued out a writ of error.

Lucius M. Cuthbert (Henry T. Rogers and D. B. Ellis, on the brief), for plaintiff in error.

Charles G. Clements and Sam W. Jones, for defendant in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

THAYER, Circuit Judge, after stating the case as above, delivered the opinion of the court.

It is a familiar doctrine that the federal courts have no power to issue a writ of mandamus commanding state officers to levy a tax, or to do any other act, unless such power is exercised as ancillary to a jurisdiction already acquired. "The power to issue a writ of mandamus as an original and independent proceeding does not   *   *   * belong to the circuit courts" of the United States. It is a power which is derived solely from the fact that jurisdiction to hear and decide a given case has already attached, and that the issuance of the

writ is necessary to render that jurisdiction effectual.   Bath Co. v. Amy, 13 Wall. 244; Graham v. Norton, 15 Wall. 427; County of Greene v. Daniel, 102 U. S. 187; Davenport v. County of Dodge. 105 U. S. 237; McIntire v. Wood, 7 Cranch, 504.   Equally well settled is the further proposition that a writ of mandamus will not be issued requiring a state officer to levy a tax, or to do any other specific act, unless authority for the doing of that act can be found either in the express or implied provisions of some local statute.   As was said, in substance, by the supreme court in Supervisors v. U. S., 18 Wall. 71, 77, and in U. S. v. Macon Co., 99 U. S. 582, 591, and by this court in Board v. King, 32 U. S. App. 1, 14 C. C. A. 421, and 67 Fed. 202:   State officers have no powers except such as have been conferred upon them by the laws of the state.   They cannot be armed by the mandate of any court with an authority which they do not already possess; and no court, state or federal, can compel a municipal corporation to levy a tax which the laws of the state do not authorize it to levy.   Moreover, it is not the office of a writ of mandamus to create rights or impose duties; its sole function is to compel the performance of those duties which already exist.

It has been held in some cases that when, for the purpose of aiding in the execution of some public work, a municipal corporation has been empowered to borrow money and to issue bonds, a power will be implied to levy a tax for an amount adequate to discharge such obligations, although no such power appears to have been expressly granted when the debt was authorized.   U. S. v. New Orleans, 98 U. S. 381; Wolf v. New Orleans, 103 U. S. 358; Loan Ass'n v. Topeka, 20 Wall. 655; Ralls Co. Ct. v. U. S., 105 U. S. 733.   But when the laws of a state do prescribe the method of paying an indebtedness which a municipal corporation has contracted, and limit the rate of taxation for that purpose, such method of payment is exclusive.   No court has the power to vary the mode of payment, or to increase the rate of taxation, although it may be that the means provided by the legislature for canceling the indebtedness are defective or insufficient.   Persons who become purchasers of the securities of a municipal corporation, whether they are bonds or warrants, must take notice of any limitations that have been imposed upon the power of taxation for their payment, and of the provisions that have been made by law to that end.   Where some provision has been made to enable a municipal corporation to discharge its debts, the fact that the provision so made is inadequate will not authorize a court to devise a different plan, or to compel a larger exercise of the power of taxation.   U. S. v. Macon Co., 99 U. S. 582, 590; Supervisors v. U. S., 18 Wall. 71.   The foregoing propositions are not in terms denied. but it is contended that by the laws of the state of Colorado which were in force when the warrants in controversy were issued, and when the judgment thereon was rendered, the duty was imposed on the board of county commissioners, hereafter termed the "defendants," to levy a special tax adequate to pay the petitioner's judgment. The first statute which is invoked as imposing the alleged duty is section 8 of an act approved on March 24, 1877, entitled "An act concerning counties, county officers, and county government, and re-

pealing laws on these subjects" (Laws Colo. 1877, pp. 218, 219), which is as follows:

"Sec. 8. When a judgment shall be rendered against the board of county commissioners of any county, or against any county officer, in an action prosecuted by or against him in his name of office, when the same shall be paid by the county, no execution shall issue upon said judgment, but the same shall be levied and paid by the tax, as other county charges, and when so collected shall be paid by the county treasurer to the person to whom the same shall be adjudged, upon the delivery of a proper voucher therefor: provided, that nothing in this section shall prohibit the county commissioners from paying such judgment by a warrant upon the county treasurer."

This section of the act remained in force until April 28, 1887, when it was amended in the manner hereinafter stated. The act of March 24, 1877, above referred to, also prescribed the manner in which the finances of the various counties of the state should be administered by means of county orders or warrants. Sections 44, 106, 112, 113, and 115 of said act (Laws Colo. 1877, pp. 231, 244-246) provided, in substance, that county orders might be issued for audited claims against the county; that the number, date, and amount of each warrant, and the name of the person to whom it was issued, should be entered in a book kept for that purpose; that county orders should be entitled to a preference in payment according to the order in which they were presented to the county treasurer for payment; that said treasurer should keep a register of county orders, wherein should be entered the date of presentation of each county order, whether it was paid or otherwise, the amount thereof, the name of the person to whom payable, and the name of the person presenting the same, which register should be open to public inspection at all reasonable hours. The act further provided that every fund in the hands of a county treasurer should be paid out by him in the order in which the warrants drawn thereon should be presented for payment, and that any county treasurer who should pay a county order when there was not sufficient money in his hands to pay all orders that had been previously presented against said fund should be deemed guilty of a high misdemeanor. These latter provisions of said act have remained practically unchanged from the date of their enactment, in March, 1877, to the present time. Mills' Ann. St. Colo. c. 33, §§ 900, 906, 909. Four days prior to the passage of the act of March 24, 1877, to wit, on March 20, 1877, the legislature of the state of Colorado passed another act entitled, "An act to provide for the assessment and collection of revenue, and to repeal certain acts in relation thereto." Laws Colo. 1877, pp. 741, 742. The sixth section of said act declared that:

"There shall be levied and assessed upon taxable, real and personal property within this state in each year the following taxes: * * * for interest and payments on county bonds, such rate as may be necessary to pay said interest and payments; for ordinary county revenue, including the support of the poor, not more than ten mills on the dollar; for the support of schools, not less than two nor more than five mills on the dollar; for road purposes, not more than five mills on the dollar, and a poll tax not to exceed one dollar for such purposes, as shall be determined by the county commissioners of each county."

This latter provision, limiting the rate of taxation for ordinary county revenue, including the support of the poor, to 10 mills on the

dollar, appears to have remained in force until April 1, 1891, when that clause was changed so as to permit a levy thereafter for such amount as was "sufficient to defray the ordinary county expenses." Laws Colo. 1891, pp. 111, 112.

In view of the local legislation aforesaid, the question arises whether, upon a true construction of section 8 of the act of March 24, 1877, it should be held to authorize and require the levy of a special tax to any amount that may be found necessary to pay a judgment which is founded, like the one at bar, upon warrants issued for ordinary county expenses. Counsel for the petitioner insist upon an affirmative answer to this question, but, in our opinion, the position so taken is untenable. The acts of March 20, 1877, and March 24, 1877, were passed by the same legislature, at about the same time. They are, therefore, in pari materia, and must be construed together, as forming parts of the same law. Now, in view of the provision limiting the rate of taxation for ordinary county revenue to 10 mills on the dollar, found in the act of March 20, 1877, it is obvious, we think, that the legislature did not intend to declare that, if the holder of warrants issued for ordinary county expenses saw fit to reduce them to a judgment, instead of waiting for their orderly payment in the mode provided by law, it should thereupon become the duty of the board of county commissioners to levy a tax for the special benefit of the judgment creditor, adequate to pay his judgment, and to make such a levy although it raised the rate of taxation for ordinary county expenses to a sum exceeding the limit of 10 mills on the dollar. The legislature must have foreseen that a provision of that character would necessarily derange the plan for paying warrants issued for ordinary county expenses, in the order of their presentation; that it would necessarily lead to great confusion in the administration of the county finances, and that it might cause the annual levy for ordinary county expenses to exceed 10 mills on the dollar. We must accordingly adopt a more reasonable construction of the section of the act now under consideration,—a construction which is more in harmony with other provisions of the act, and that will best promote the object which the lawmaker seems to have had in view.

Recurring to the act of March 24, 1877, we find that the various counties of the state of Colorado were thereby authorized, under certain conditions, which need not be stated in detail, to contract what may be termed an extraordinary indebtedness for the erection of public buildings, and for the repair of roads and bridges, and to issue bonds for the amount of the indebtedness so created. They were also authorized to issue bonds to refund county orders that had been issued by them respectively prior to July 1, 1876; that is to say, before Colorado became a state. Laws Colo. 1877, §§ 21 to 29, both inclusive. It must also be borne in mind that the counties of the state were liable to be sued on other obligations growing out of contract or tort, and that it was necessary to make some provision for the payment of judgments that might be recovered in actions of that character. It is most probable, we think, that the authority conferred on the board of county commissioners by section 8 of the

act of March 24, 1877, to levy a tax in case a judgment was recovered against a county, unless there happened to be funds in the county treasury on which a warrant could be drawn, had reference to judgments recovered against the county on account of some extraordinary expense or obligation, and that it had no reference to judgments recovered on warrants issued for the customary or ordinary expenses of the county. The legislature doubtless assumed that expenses of the last-mentioned character would be kept within the limits of the sum authorized to be raised annually by taxation to meet such expenses, and that the orders or warrants drawn for those expenses would be paid with reasonable promptness in the order of their presentation to the county treasurer. It is clear, we think, that the legislature did not intend that the holder of such warrants should have the right to reduce them to a judgment, and to demand the levy of a special tax to pay the same when recovered, without reference to the question whether there were other warrants entitled to priority of payment, and without reference to the question whether such levy would increase the annual tax for ordinary county expenses to a sum exceeding 10 mills on the dollar. We would not be understood as deciding that a suit cannot be maintained on warrants issued for ordinary county expenses, for such suits can unquestionably be maintained, at least in the federal courts. But what we do mean to decide is that, if a judgment is recovered on county warrants of that class, section 8 of the act of March 24, 1877, does not authorize the levy of a special tax to any amount that may be necessary to pay such judgment. The most that such a judgment creditor, who relies on the provisions of said section, can lawfully demand, is that the board of county commissioners shall thereafter levy in each year, for ordinary county expenses, a tax to the amount of 10 mills on the dollar, until his judgment is discharged. This is the view that was taken in the case of Supervisors v. U. S., 18 Wall. 71, which arose in Iowa. A statute of the state of Iowa provided for the levy of a tax upon the taxable property of the county for ordinary county revenue, including the support of the poor, not more than 4 mills on a dollar, and a poll tax of 50 cents. Another statute of the state, found in the chapter concerning executions, provided that, in case of a judgment being rendered against a corporation, "if the debtor corporation issues no scrip or evidence of debt, a tax must be levied as early as practicable, sufficient to pay off the judgment, with interest and costs." It was held that the latter statute found in the chapter on Executions did not authorize the levy of a special tax to pay a judgment recovered for ordinary expenditures, but that the county was limited to a tax of not more than four mills annually to pay debts of that character. See, also, Clay Co. v. McAleer, 115 U. S. 616, 6 Sup. Ct. 199. Inasmuch, then, as the laws of the state placed a limit upon the rate of taxation which could be levied for ordinary county expenses, and inasmuch as the answer which was filed by the defendants contained repeated averments that taxes had been levied in every year at the highest rate authorized by law, we are constrained to hold that the answer disclosed a

77 F.—37

good and sufficient reason why a writ of mandamus ought not to be awarded, so far as the right to the writ was predicated on section 8 of the act of March 24, 1877. It may be conceded that because the petitioner's warrants, now merged in a judgment, were issued and registered prior to the repeal of said section, such repeal could not operate to deprive him of the remedy for their collection which was provided thereby, unless the repealing act provided an equally efficacious remedy. Louisiana v. Police Jury of St. Martin's Parish, 111 U. S. 716, 4 Sup. Ct. 648. But, if the averments of the answer are true, that taxes at the highest rate allowed by law for ordinary county expenses have been levied continuously in the county of Grand in each and every year since the warrants were issued, the petitioner would not be entitled to a writ of mandamus, although section 8, above quoted, had not been repealed.

It is next insisted that, notwithstanding all the averments contained in the answer, the defendants were in duty bound to levy a special tax adequate to pay the petitioner's judgment, under the provisions of an act passed by the legislature of the state of Colorado on April 28, 1887. Laws Colo. 1887, pp. 240, 241. The first section of that act amended section 8 of the act of March 24, 1877, and is as follows:

"* * * When a judgment shall be given and rendered against a county of this state in the name of its board of county commissioners, or against any county officer, in an action prosecuted by or against him in his official capacity, or name of office, when the judgment is for money and is a lawful county charge, no execution shall issue thereon, but the same may be paid by the levy of a tax upon the taxable property of said county, and when the tax shall be collected by the county treasurer, it shall be paid over, as fast as collected by him, to the judgment creditor, or his or her assigns, upon the execution and delivery of proper vouchers therefor; but nothing contained in this section shall operate to prevent the county commissioners from paying all or any part of any such judgment by a warrant, drawn by them upon the ordinary county fund in the county treasury: provided, that the power hereby conferred to pay such judgment by a special levy of such tax, shall be held to be in addition to the taxing power given and granted to such board, to levy taxes for other county purposes, but the board of county commissioners shall levy under this law only such taxes as they, in their discretion, may deem expedient or necessary, and all taxes levied by authority of this act shall not exceed one and one-half per centum on the dollar of assessed property for any one fiscal year; and provided further, that the powers herein given to the board of county commissioners shall not be construed as requiring said board to levy any special tax to pay any judgment, unless in its discretion the said board shall so determine. * * *"

The second section of the same act provided, in substance, that all claims against a county should be presented for allowance to the board of county commissioners before a suit should be brought thereon; that all audited claims against a county should be paid by warrants drawn on the proper county fund; that the county funds should be divided into two funds, known as the "Ordinary County Revenue Fund," and the "Road Purposes Revenue Fund"; that no warrants should thereafter be drawn on a fund unless there was money in the treasury standing to the credit of the fund adequate to pay it; and that whenever there were no moneys in the treasury to meet the necessary county expenses, it should be lawful for the board of county commissioners to order warrants to be drawn in anticipation of the payment of taxes actually levied to the extent of 80 per cent. thereof.

The foregoing act having been passed after the issuance and registration of the petitioner's warrants, it may be remarked at the outset, that the petitioner cannot claim the benefit of any new or additional remedy thereby provided for the collection of a judgment, except on the conditions prescribed by the legislature. If, by the terms of the act, the board of county commissioners were left at liberty to determine, in the exercise of their discretion, whether in a given case a special tax should or should not be levied, a federal court in a mandamus proceeding cannot undertake to revise or control the exercise of that discretion. Board v. King, 32 U. S. App. 1, 14 C. C. A. 421, and 67 Fed. 202. In the case last cited this court considered the question whether, by the act of April 28, 1887, the legislature did intend to vest the board of county commissioners with such discretion, and the conclusion was reached that such was the obvious purpose of the act. It further decided that it was competent for the legislature to confer such discretionary power upon the board of county commissioners when dealing with judgments thereafter rendered, unless the judgment was founded on county obligations contracted under the provisions of some prior law which provided a more efficacious remedy. Looking at the language of the act of April 28, 1887, particularly the second proviso of the section above quoted, we then thought, and are still of opinion, that we can discern a manifest purpose to vest the board of county commissioners with the discretion to levy a special tax or not to levy it, as they might deem best. It seems to us most probable that the legislature, in framing the act in question, was actuated by the belief that the financial affairs of some of the counties in the state had been carelessly administered; that some counties had issued warrants without authority of law, for which they had received no consideration; that judgments had perhaps been rendered on some of such warrants, either by default or through lack of a proper defense, which would foreclose all further inquiry in a mandamus proceeding as to the merits of the claims; and that it was best, for these reasons, to leave the board of county commissioners at full liberty to determine what demands were meritorious, and ought to be paid by the levy of a special tax, and what claims ought not to be thus paid. Whether it was wise or unwise to vest boards of county commissioners with such discretionary power is not a proper subject for judicial consideration.

On the argument of the case at bar, our attention was directed to a decision by the court of appeals of Colorado in People v. Board of Com'rs of Rio Grande Co., 42 Pac. 1032, where the conclusion appears to have been reached that section 1 of the act of April 28, 1887, does impose on the board of county commissioners the absolute duty of levying a special tax to discharge a judgment against a county, when there are no funds in the county treasury applicable to its payment. The conclusion thus announced as to the meaning of the act of April 28. 1887, seems to have been influenced to some extent by the terms of a subsequent act of the legislature heretofore referred to (Laws Colo. 1891, pp. 111, 112), which made it the duty of the board of county commissioners, in place of levying a tax of 10 mills

annually, as theretofore, to levy a tax thereafter at no greater rate than was necessary to defray the ordinary county expenses. While the decision in question is persuasive authority, and is entitled to the highest respect, and to careful consideration, because it construes a local statute, and emanates from one of the appellate courts of the state, yet we are constrained to hold that it is not conclusive on this court, for the reason that it is not a final decision by the highest judicial tribunal of the state, and therefore does not conclusively settle the local law; and for the further reason that the decision was not promulgated until nearly a year after this court had had occasion to place a definite construction upon the local statute in question. Burgess v. Seligman, 107 U. S. 20, 35, 2 Sup. Ct. 10. When the case of Board v. King was under consideration by this court, it was an open question in the state of Colorado whether the act of April 28, 1887, when properly construed, was intended to vest the board of county commissioners with a discretion to determine, as it deemed best, whether a special tax ought to be levied to pay a judgment recovered against the county. So far as we are aware, no state court had at that time had occasion to consider it, but the question was res nova. In the case last referred to this court carefully considered the act of April 28, 1887, in the light of other cognate local laws, and reached the conclusion that the exercise of the power to levy a tax, which was conferred by said act, was intended to be wholly discretionary with the board of county commissioners, and that no federal court could lawfully control the exercise of that discretion. Further consideration of the subject has but served to strengthen our conviction that such was the purpose of the act. We think it might be justly charged that we had ignored the clearly expressed will of the lawmaker if, notwithstanding the provision "that the powers herein given to the board of county commissioners shall not be construed as requiring said board to levy any special tax to pay any judgment unless in its discretion, the said board shall so determine," this court should declare that when a judgment has been recovered against a county, and there are no funds in the treasury on which a warrant can be drawn, such board can exercise no discretion, but must of necessity levy a special tax.

Under these circumstances, it can hardly be contended that it is the duty of this court to surrender its convictions, and reverse its previous judgment in deference to a contrary decision made elsewhere, although we would cheerfully adopt the views of the state court if we felt that the construction by it placed on the local statute was right, or that the proper construction of the statute, in the respect above indicated, was involved in doubt.

By the provisions of an act passed on April 1, 1891 (Laws Colo. 1891, pp. 111, 112), it was made the duty of the board of county commissioners to levy a tax of three mills on the dollar in each year "for the purpose of paying outstanding warrants and other floating indebtedness"; and by another act, passed on April 8, 1893 (Laws Colo. 1893, pp. 100–102), it was made the duty of the board of county commissioners of any county in the state, "which has or shall have any unliquidated and unpaid county warrants or orders, drawn on

any fund, for the payment of which there are no funds in the county treasury of such county, and to pay which the incoming taxes already levied are insufficient, at the same time other county taxes are annually levied for the current year, in addition to the other taxes provided by law, to levy a sufficient tax, not exceeding five mills on the dollar of assessed property, as shown by the assessment roll of such county of the current year, for the purpose of creating a special fund for the liquidation, payment and redemption of all such unliquidated and unpaid warrants or orders," and to make a like levy annually until all such unpaid warrants or orders are fully liquidated. It would seem, therefore, that the legislature of the state of Colorado has made some provision since the act of April 28, 1887, was passed for the relief of warrant holders, and for the gradual payment of the outstanding debts of such counties as have heretofore become involved by reckless expenditures, or by the careless management of their financial affairs. We do not understand, however, that any complaint is made in the present proceeding of a failure on the part of the defendants to discharge their duty under the provisions of either of these acts, or that the right to relief is in any respect predicated thereon. The claim is that the petitioner is entitled to a writ of mandamus under the acts of 1877 and 1887 heretofore considered. As we are unable, for the reasons heretofore stated, to assent to that view, and as we are of the opinion that the answer which was filed by the defendants showed sufficient cause why a writ of mandamus ought not to be awarded, the judgment of the circuit court is hereby affirmed.

SANBORN, Circuit Judge (dissenting). I am unable to concur in the opinion and conclusion of the majority of the court in this case on the following grounds:

1. In my opinion, the power vested in, and the duty imposed upon, the county commissioners of a county in Colorado by section 8 of the act of March 24, 1877 (Laws Colo. 1877, pp. 218, 219), which reads: "When a judgment shall be rendered against the board of county commissioners of any county, or against any county officer, in an action prosecuted by or against him in his name of office, when the same shall be paid by the county, no execution shall issue upon said judgment, but the same shall be levied and paid by the tax, as other county charges, and when so collected shall be paid by the county treasurer to the person to whom the same shall be adjudged, upon the delivery of a proper voucher therefor: provided, that nothing in this section shall prohibit the county commissioners from paying such judgment by a warrant upon the county treasurer,"—is not limited by section 6 of the act of March 20, 1877 (Laws Colo. 1877, pp. 741, 742), which provides that "there shall be levied and assessed upon taxable, real and personal property within this state in each year the following taxes: For interest and payments on county bonds, such rate as may be necessary to pay said interest and payments; for ordinary county revenue, including the support of the poor, not more than ten mills on the dollar; for the support of schools, not less than two, nor more than five mills on the dollar;

for road purposes, not more than five mills on the dollar, and a poll tax not to exceed one dollar for such purposes, as shall be determined by the county commissioners of each county," or by any of the other provisions of the Colorado statutes. It will be noticed that the act which contains section 6 was enacted four days before that which contains section 8. If the former had been enacted subsequent to the passage of the latter, there seems to me to be nothing in it which would necessarily repeal or modify the general grant of power made by section 8. The limitation of the levy of taxes for ordinary county purposes may well refer to the current running expenses of the county, and need not be extended to a restriction upon any other express grant of power made before or subsequent to its passage. Where the sections of earlier and later acts can, by any reasonable construction, stand together, they must so stand. Gowen v. Harley, 12 U. S. App. 574, 584, 6 C. C. A. 190, 196, and 56 Fed. 973, 979; The Distilled Spirits, 11 Wall. 356, 365; Henderson's Tobacco, 11 Wall. 652, 658; Daviess v. Fairbairn, 3 How. 636, 644; U. S. v. Walker, 22 How. 299, 311; McCool v. Smith, 1 Black, 459, 470; State v. Stoll, 17 Wall. 425, 436. But the grant of the power to levy the tax to pay the judgments against a county in section 8 was subsequent to the supposed restriction in section 6, and stands as an additional and unlimited grant. By its terms the authority given by it is general, and applies to every judgment against the board of county commissioners of a county. When the legislature enacted this section, it had the power to refuse to grant this authority to levy a tax to pay any judgment; it had the power to except from the grant the power to levy taxes to pay judgments for ordinary county expenses, or for the support of the schools, or for road purposes, or for any other purpose; and it had the power to grant the authority to levy the tax to pay every judgment of every kind. The legislature chose the latter alternative. They excepted no judgments from the grant of this power by the terms of the section, but expressly extended it to every judgment there specified, and to my mind that fact is conclusive evidence that no judgment ought to be excepted. "Where the legislature makes a plain provision, without making any exception, the courts can make none." French v. Spencer, 21 How. 228, 238; McIver v. Ragan, 2 Wheat. 25, 29; Bank v. Dalton, 9 How. 522, 528; Vance v. Vance, 108 U. S. 514, 521, 2 Sup. Ct. 854; Madden v. County of Lancaster, 27 U. S. App. 528, 539, 12 C. C. A. 566, 572, 573, and 65 Fed. 188, 195. Since, in my opinion, the power to levy taxes to pay judgments upon the warrants now in question was vested in the county commissioners when these warrants were issued, no subsequent repeal of that legislation or destruction of that power can deprive the holders of the warrants of the right to its exercise without impairing the obligations of their contracts. I think the power still exists, and that for this reason the demurrer to the answer should be sustained.

2. In People v. Board of Com'rs of Rio Grande Co., 42 Pac. 1032, the court of appeals of Colorado decided that section 1 of the act of April 28, 1887 (Laws Colo. 1887, pp. 240, 241), imposes upon the board of county commissioners of a county the absolute duty to levy

a tax of 1½ per centum on the dollar of assessed property in the county in each year for the payment of any judgment, to the payment of which there is no money in the county treasury applicable. Whatever my opinion might be of the true construction of this section, in the absence of an interpretation of it by a judicial tribunal of the state by which it was enacted, that interpretation ought, in my opinion, to govern this court in the construction and application of this statute now, and upon that ground the demurrer should be sustained. This is a statute defining the powers and duties of officers of a quasi municipal corporation of a state. Its construction by the highest judicial tribunal of the state which enacted it becomes a part of the law of that state, and is entitled to the same consideration and effect as if that construction had been written into the statute by the act of the legislature itself. Bergman v. Bly, 27 U. S. App. 650, 655, 13 C. C. A. 319, 322, and 66 Fed. 40, 43; Claiborne Co. v. Brooks, 111 U. S. 400, 410, 4 Sup. Ct. 489; Bolles v. Brimfield, 120 U. S. 759, 763, 7 Sup. Ct. 736; Detroit v. Osborne, 135 U. S. 492, 499, 10 Sup. Ct. 1012; Dempsey v. Township of Oswego, 4 U. S. App. 416, 2 C. C. A. 110, and 51 Fed. 97; Rugan v. Sabin, 10 U. S. App. 519, 3 C. C. A. 578, and 53 Fed. 415; Travelers' Ins. Co. v. Township of Oswego, 19 U. S. App. 321, 330, 7 C. C. A. 669, 674, and 59 Fed. 58, 63; Madden v. County of Lancaster, 27 U. S. App. 528, 536, 12 C. C. A. 566, 570, and 65 Fed. 188, 192. The fact that this court in another case took a different view of the meaning of this statute, and the fact that when the court below decided this case the opinion of the court of appeals of Colorado in People v. Board of Com'rs of Rio Grande Co., supra, had not been announced, ought not, in my opinion, to stand in the way of the uniform administration of justice under these statutes in the state and federal courts in Colorado, according to the interpretation given them by a high judicial tribunal of that state.

3. By the provisions of Laws Colo. 1891, pp. 111, 112, it was made the duty of the board of county commissioners to levy a tax of three mills on the dollar each year "for the purpose of paying outstanding warrants and other floating indebtedness." This tax has not been levied, and I am of the opinion that under this statute the plaintiff in error is entitled to a writ of mandamus to compel the levy of such a tax to create a fund to be applied to the payment of such warrants in the order prescribed by the statutes, and on that ground the demurrer should be sustained.