CITY REALTY CO. v. S. R. H. ROBINSON CONTRACTING CO.

(Circuit Court, E. D. Arkansas, W. D. November 18, 1910.)

No. 5,519.

1. DRAINS (§ 2*)—ARKANSAS STATUTE AUTHORIZING ESTABLISHMENT BY COUNTY—REPEAL BY IMPLICATION.

Acts Ark. 1903, p. 278 (Kirby's Dig. Ark. §§ 1414–1450), authorizing any county court to construct a drainage ditch on petition in case after a hearing it approves the report of viewers previously appointed to condemn right of way and assess the damages and benefits, subject to the approval of the court and right of appeal, the lands assessed for the work to constitute a drainage district designated by number, was not repealed by implication by Acts Ark. 1905, p. 143, providing a method for the exercise of the right of eminent domain by levee and drainage districts organized under the laws of the state, by commissioners appointed by the judge of the circuit court on application of the president or secretary of such district, which act applies only to districts created by law having officers and corporate powers; whereas, under the act of 1903 the entire business is done by the county court, which merely lays off the districts for assessment purposes, such districts having no organization nor officers.

[Ed. Note.—For other cases, see Drains, Dec. Dig. § 2.*]

2. STATUTES (§ 161*)—REPEAL BY IMPLICATION—GENERAL RULES.

Where two statutes cover, in whole or in part, the same matter and are not wholly irreconcilable, no purpose to repeal being clearly expressed or indicated, effect is to be given to both, and the former statute will not be considered as repealed.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 230–234; Dec. Dig. § 161.*

Repeal of statutes by implication, see note to First Nat. Bank v. Weidenbeck, 38 C. C. A. 136.]

At Law. Action by the City Realty Company against the S. R. H. Robinson Contracting Company. On demurrer to amendment to answer. Overruled.

Bradshaw, Rhoton & Helm, for plaintiff.
John McClure, for defendant.

TRIEBER, District Judge. The plaintiff sued the defendant, who had a contract from the county court of Pulaski county to build a drainage ditch in that county, designated by the court as "drainage district No. 1 of Pulaski county," for trespass in cutting the ditch on the lands of plaintiff. An amendment to the answer sets up as a plea in bar to the action that the drainage district was so designated by the county court of Pulaski county under an act of the General Assembly of the state of Arkansas of April 23, 1903, entitled "An act to enable the owners of swamp and marshy lands to drain and reclaim them, when the same cannot be done without affecting the lands of others, prescribing the duties of county courts and other officers in the premises, and to provide for the repair and enlargement of such drains." Acts Ark. 1903, p. 278. This act is digested in Kirby's Digest of the Statutes of Arkansas, 1904, as sections 1414 to 1450.

The plea sets up fully all the steps that were taken for the laying off of the district and shows a strict compliance with all the provisions of that act, including the condemnation of the lands belonging to the plaintiff. The plaintiff demurred to this amendment to the answer upon the ground that the act of 1903, in so far as it provides for the assessment of damages and condemnation of lands necessary for the building of the ditch, was repealed by an act of the General Assembly of the state of Arkansas of February 24, 1905, entitled, "An act to provide a method for the exercise of the right of eminent domain by levee drainage and ditching districts." Acts Ark. 1905, p. 143. The proceedings for the laying off of this drainage district were begun in the county court of Pulaski county in June, 1905, after the passage of the latter act. This act does not in specific terms repeal the act of 1903, but it is claimed on behalf of the plaintiff that the later act covers the entire subject regulating the exercise of the right of eminent domain for drainage and levee districts and the assessment of damages, and therefore repeals the former act by implication.

The law governing repeals by implication is well settled by the decisions of the highest court of the state of Arkansas and may be stated to be as follows: Repeals of statutes by implication are not favored, and, unless it clearly appears that the two acts are so inconsistent that they cannot be reconciled and stand together, the former act will not be deemed as having been repealed. Also, that when the Legislature takes up the whole subject anew and covers the entire subject-matter of the former statute, and evidently intends it as a substitute for it, the prior act will be repealed thereby, although there may be no express words to that effect, and there may be in the old act provisions not embraced in the new act.

Assuming for the present that the act of 1905 was intended as a substitute for all prior acts on that subject, does it include drainage districts laid off under the provisions of the act of 1903? A careful examination of the legislation of the state shows that a large majority of the levee and drainage districts in the state have been created by special acts of the Legislature, although there has been for over 30 years a general act for the creation of levee districts, which is digested in Kirby's Digest of the Statutes of Arkansas as chapter 100, sections 4927 to 4961. The subject of drainage was taken up by the General Assembly at a much later date than that of levees, and the first acts on the subject were special acts for the benefit of certain counties enumerated in each act. In 1903 the Legislature saw proper to enact a general act which differs in many respects from all previous special acts as well as the special acts enacted since then. In that act there is no provision for the creation or even organization of a district; no officers for such districts are provided for by this act, but the entire matter is left to the county court of each county, to be set in motion by a petition filed with the clerk of that court, signed by one or more landowners if the improvement is less than five miles in length, and by five or more landowners if it be more than five miles in length, whose lands will be liable to be affected by or assessed for the construction of the same.

In this connection it is proper to call attention to the fact that under the Constitution of the state the county court has administrative powers as well as being a court of record. Its administrative powers are the control of all the affairs of the county. Upon a petition being filed by resident landowners of the lands to be affected, the county court is authorized to appoint resident freeholders of the county, not interested in the construction of the work, as viewers, and also a competent civil engineer to assist them, and they are to make a report of their findings to the county court who would then, after a hearing, determine whether the work should be undertaken or not. Notice of the appointment of the viewers and a hearing on the report are provided for in the act, and any person interested can file a remonstrance or objection to the work being done. Thereupon a hearing is to be had by the county court and the petition either granted or denied. If the petition is granted, then the lands affected and assessed for the payment of the cost of the work are to constitute a drainage district to be designated by number, and the viewers are directed, with the aid of a civil engineer, to lay out the route of the ditch and estimate the probable cost thereof. They are also to report what lands or railroads would be benefited by the improvement and apportion the cost to each in proportion to the benefit or damages which would result therefrom. The viewers are empowered to condemn the right of way and assess all damages to the owners for the appropriation of their lands, and other damages sustained, which shall be credited on their assessments as a payment, and file a report of their findings with the county court. Thereafter a day is to be set for a hearing and notice provided to the owners by the service of a summons on each of them by the sheriff, or, if they are nonresidents, by publication in a newspaper. If the court at the time set for the hearing finds that due notice had been given to all the parties, a hearing shall then be had, otherwise the cause shall be continued until each landowner has been served with notice as prescribed by the statute. At that hearing all acts of the viewers and the assessments are to be reviewed, and evidence of the objecting landowners heard by the court and a final judgment entered in accordance with the conclusions of the court. This judgment is subject to appeal to the circuit court, and from that court to the Supreme Court of the state. Sharum v. Fry (Ark.) 129 S. W. 818. There are other provisions in the act which are immaterial so far as the question now before the court is concerned and for this reason need not be referred to.

The act of 1905 seems to have been originally intended solely for the benefit of the board of directors of the St. Francis levee district, a district created by a special act with officers and full corporate powers, but was amended so as to include "all other levee and drainage districts organized under the laws of the state of Arkansas." That act provides that the exercise of the right of eminent domain by such levee or drainage district organized under the laws of the state of Arkansas is to be performed by commissioners appointed by the judge of the circuit court of the county in which it is situated, upon the application of the president or secretary of any levee or drainage dis-

trict, and this, it is claimed, applies to every drainage district whether created as a body corporate and politic by the act of the Legislature and designated as such, or merely laid off as a district by the county court under the provisions of the act of 1903.

A careful examination of the act of 1903 shows that there was no intention on the part of the Legislature to create drainage districts under that act which are to have the powers of bodies corporate, but that they were to be districts laid off by the county court under the absolute control of that court, with no officials nor any of the attributes of a corporation. It makes no provision for any officers whatever, while, on the other hand, all other districts have a board of directors, a collector, a treasurer, authority to borrow money and issue bonds therefor, levy its own assessments, collect them through its own officers, and when collected to be paid to its own treasurer and by him paid out again upon the orders of the board of directors of the district. They are also invested with the power to sue and be sued, and to pay all damages assessed out of its treasury under the order of the directors. On the other hand, under the act of 1903, it is the county court which levies the assessments and which issues the bonds or warrants; the assessment is placed upon the tax books by the county clerk in the same manner as other county taxes; they are collected by the collector of county taxes and the money paid into the county treasury and drawn out again by warrant of the clerk of the county court in pursuance of an order of that court. Section 1437 provides how bonds may be issued by order of the county court and what provision shall be made by that court for paying them. Section 1448 provides that all fees shall be paid out of the county treasury when claims therefor are allowed by the county court, and the general county fund shall be reimbursed out of the moneys realized from the sales of bonds or collection of taxes. Suits are to be brought in the name of the state of Arkansas at the relation and to the use of the collector of revenue of such county.

It will thus be seen that under the act of 1903 drainage districts are to be designated and laid out practically in the same manner as ordinary county roads, with this difference: That the cost thereof shall be paid by the owners of the lands according to the benefits derived after a hearing in a court of record, and whose judgment is subject to review by higher courts, including the Supreme Court of the state. No district under the act of 1903 can be said to be a district organized under the laws of the state, although laid off under its laws. If the act of 1905 repealed the act of 1903, how is a drainage district laid off under the act of 1903 to proceed in the condemnation of lands necessary to cut a ditch? The circuit judge can only act under that act upon application of the president or secretary of the district. See section 2. But these districts have no such officers, nor any other. A careful examination of the two acts, in view of the history of the legislation of the state for over 30 years, conclusively shows that the object of the act of 1905 was for those levee and drainage districts which had a corporate existence, of which there are probably over 50 now in existence in this state, all of them created by special acts of the

Legislature and clothed with corporate powers. No doubt, when this act of 1905 was introduced for the benefit of the board of directors of the St. Francis levee district, which is the largest in the state, it was thought best to make it apply to all districts similarly situated, instead of passing special acts for the benefit of each separate district. If the intention of the Legislature had been to make it apply to such districts as were laid off under the provisions of the act of 1903, it would have been an easy matter to use language to show that intent, and at the same time provide for some landowner affected by the cutting of the drainage ditch to make the application for condemnation. The proceedings in the circuit court under the act of 1905 are special statutory proceedings, not according to the course of the common law, nor in the exercise of the court's general jurisdiction, and for this reason a judgment rendered by the court, if the petition or record fail to show jurisdiction, its judgment would be absolutely void. As the jurisdiction of the circuit court can only be invoked by the president or secretary of a district, and there being no such officers in districts laid off under the act of 1903, how could that court obtain jurisdiction upon the petition of any other person? Hindman v. O'Connor, 54 Ark. 627, 16 S. W. 1052, 13 L. R. A. 490, and Morris v. Dooley, 59 Ark. 483, 28 S. W. 30, 430, are conclusive on that point.

But, even if it be conceded that it was the intention of the Legislature to have the provisions of the act of 1905 apply to districts laid off under the act of 1903, does the later act have the effect of repealing the former act in the absence of a special provision to that effect? That the Legislature has the power to invest the county court and the circuit court with jurisdiction to entertain condemnation proceedings is unquestioned, and for this reason it cannot be said that it clearly appears that the two acts cannot stand together. The Supreme Court of this state has in several well-considered cases held that a later act vesting jurisdiction in one court does not deprive any other court of jurisdiction of the same subject-matter which it possessed prior thereto. In Patton v. Wagner, 19 Ark. 233, it was held that a statute authorizing common-law courts to entertain jurisdiction of proceedings for the partition of real estate did not deprive courts of equity of their jurisdiction in cases of that nature. In Jones v. Jones, 28 Ark. 19, it was held that the jurisdiction granted to probate courts to assign dower did not deprive chancery courts of their jurisdiction to lay off dower. In Murray v. Rapley, 30 Ark. 569, and Roberts v. Wilcoxson, 36 Ark. 355, it was held that the statute conferring upon common-law courts jurisdiction to enforce mechanic's liens on real estate did not divest the chancery courts of the same jurisdiction.

Even if it be conceded that the act of 1905 does cover the entire subject of the exercise of the right of eminent domain for all levee and drainage districts, existing under the laws of the state of Arkansas, that would not justify the court in holding that the provisions of the act of 1903 on that subject are repealed thereby, for in order to have that effect it must be clear that the whole subject-matter is

covered, and that it was the intention of the Legislature that it should be the exclusive remedy. Or the rule may be stated as follows: Where two statutes cover, in whole or in part, the same matter and are not wholly irreconcilable, no purpose to repeal being clearly expressed or indicated, effect is to be given to both, and the former statute will not be considered as being repealed. Frost v. Wenie, 157 U. S. 46, 58, 15 Sup. Ct. 532, 39 L. Ed. 614; United States v. Healey, 160 U. S. 136, 147, 16 Sup. Ct. 247, 40 L. Ed. 369; United States v. Greathouse, 166 U. S. 601, 17 Sup. Ct. 701, 41 L. Ed. 1130; Stryker v. Board of Commissioners, 77 Fed. 582, 23 C. C. A. 286; Board of Commissioners v. Ætna Life Insurance Co., 90 Fed. 222, 32 C. C. A. 585; City of Wichita v. Old Colony Trust Co., 132 Fed. 641, 66 C. C. A. 19; Benton v. Willis, 76 Ark. 443, 88 S. W. 1000.

That it was not the intention of the Legislature to repeal the act of 1903 is further shown by the fact that these provisions of the act of 1903 were amended by the General Assembly of the state by the act of March 26, 1907. Acts Ark. 1907, p. 276. The title of that act is "An act to amend sections 1414, 1415, 1416, 1424, 1434, 1435, 1436, 1437, 1438, 1442, and 1443 of Kirby's Digest of the Statutes of the State of Arkansas." If it had been the intention of the Legislature to repeal those sections by the act of 1905, it would have been, of course, impossible to have amended them in 1907, and, while the construction placed by the legislation upon prior statutes of a state is not conclusive on the courts, it is certainly entitled to consideration in determining the question whether the statute thus amended had before that time been repealed.

In the opinion of the court the act of 1903 was not repealed by the act of 1905, and the county court of Pulaski county had jurisdiction to lay off the district and have the damages assessed by viewers appointed under that act.

The demurrer to the amendment to the answer is overruled.