## CONVERSE v. CITY OF FORT SCOTT.

Pursuant to the authority conferred by the act of the legislature of the State of Kansas, and by virtue of a popular election thereby authorized, the mayor and council of the " City of Fort Scott " were empowered to issue $25,000 of bonds of the city for the purpose of procuring the right of way for the Missouri, Kansas, and Texas Railway Company through that city, and also procuring grounds for dépôts, engine-houses, machine-shops, and yard-room, and donating the same to the company, provided that the company, in the judgment of the mayor and council, had first given evidence of their intention to comply with certain specified conditions. The company did comply with the conditions. The mayor and council did then, upon an understanding with the company, agree to deliver to it the $25,000 of bonds in lieu of said grounds and right of way, and in full satisfaction of all the obligations resting on the city in relation thereto. Thereupon the bonds were duly issued, and registered in the office of the State auditor, who certified upon each bond that it had been regularly and legally issued, that the signature to it was genuine, and that it had been duly registered in accordance with the State law. The bonds were thereupon delivered to the railroad company. *Held,* that the bonds were binding on the city.

ERROR to the Circuit Court of the United States for the Northern District of Kansas.

This was an action to recover the interest on certain bonds

issued by the city of Fort Scott, Kan. One of the bonds (all of which were similar) is as follows : —

"No. 1.　　　　　UNITED STATES OF AMERICA.　　　　　$1,000.
" STATE OF KANSAS,

　　" *City of Fort Scott, in the county of Bourbon:* —

" Issued under the laws of Kansas, and in pursuance of an ordinance of the city of Fort Scott, approved Dec. 22, 1870. $25,000 subscription to the Missouri, Kansas, and Texas Railway Company.

　　" Know all men by these presents, That the city of Fort Scott, county of Bourbon, in the State of Kansas, hereby, for value received, acknowledges itself indebted and firmly bound to pay to the Missouri, Kansas, and Texas Railway Company, or bearer, the sum of $1,000, lawful money of· the United States of America, which sum of money the said city promises to pay on the first day of July, A.D. 1890, at the Fourth National Bank, in the city of New York, with interest thereon at the rate of seven per centum per annum, payable semi-annually at the office of said · Fourth National Bank, in said city of New York, on the first day of January and July in each year, on presentation and surrender of the annexed coupons as they severally become due.

" The city, the maker hereof, reserves the right to pay this bond at its option at any time before maturity.

" In witness whereof, the said city of Fort Scott has caused this bond to be signed, sealed, and delivered on its behalf and for its benefit by its mayor, and countersigned by its clerk, duly and legally appointed and authorized in this respect. ·

" FORT SCOTT, KAN., July 1, 1870.

　　　　　　　　　　" B. P. MCDONALD, *Mayor*.　　[SEAL.]
" T. A. CORBETT, *City-Clerk*."

(Across the face in red ink) $1,000.

Each of said bonds, in order to distinguish it from others of like character, was numbered, and, pursuant to law, was duly registered in the office of the auditor of the State of Kansas. Attached to each bond was the following certificate of such auditing; to wit: —

" I, A. Thoman, auditor of the State of Kansas, do hereby certify that this bond has been regularly and legally issued ; that the signa-

tures thereto are genuine; and that such bond has been duly registered in my office in accordance with an act of the legislature, entitled " An Act to authorize counties, incorporated cities, and municipal townships, to issue bonds for the purpose of building bridges, aiding in the construction of railroads or other works of internal improvement, and providing for the registration of such bonds, the registration of other bonds, and the repealing of all laws in conflict therewith," approved March 2, 1872.

" Witness my hand and official seal, this seventh day of January, 1873.

"A. THOMAN, <em>Auditor of State.</em>"

Attached to each bond were coupons falling due on the first days of January and July, one of which is as follows: —

" $35.00.                STATE OF KANSAS.

" City of Fort Scott, in the county of Bourbon, will pay the bearer hereof thirty-five dollars, at the Fourth National Bank, in the city of New York, on the first day of July, 1872; being six months' interest on bond No. 1.

" T. A. CORBETT, <em>City-Clerk.</em>"

*Mr. G. C. Yeaton* for the plaintiff in error.
*Mr. A. L. Williams,* contra.

MR. JUSTICE STRONG delivered the opinion of the court.

The general legislation of Kansas confers unusual power upon municipal corporations in that State. Not only are they authorized to subscribe for and take stock in any railroad company duly organized under any law of the State or Territory, and to loan their credit to such corporations upon such conditions as they may prescribe (Acts of 1869, c. 29), but the act of Feb. 28, 1868 (Gen. Stat. c. 19), confers upon some of them much more extended powers. It enlarges the range of municipal authority and duty far beyond the limits within which such corporations are commonly understood to be confined. That was an act providing for the incorporation of cities of the second class, of which the city of Fort Scott is one. By the twenty-ninth section, the mayor and council of each such city governed by the act are empowered to enact, ordain, alter, modify, or repeal such ordinances as it shall deem expedient " for the benefit of trade and commerce " among

others.    Sect. 30, sub-sect. 32, grants power " to take all need-
ful steps to protect the interest of the city, present or prospec-
tive, in any railroad leading from or towards the same, but not
to take stock in any railroad without a vote of a majority of
the legal voters."    Sub-sect. 33 of sect. 30 authorizes all such
ordinances as may be expedient, and not inconsistent with the
laws of the State, maintaining *inter alia* " the trade, commerce,
and manufactories " of the city; and the thirty-seventh sub-
section (which has a very direct bearing upon the case now
before us) empowers the mayor and council " to take private
property for public use, *or for the purpose of giving the right of
way or other privilege to any railroad company*, or for the pur-
pose of erecting or establishing market-houses and market-
places, or for any other necessary public purpose.    Provided,
however, that in all cases the city shall make the person or per-
sons whose property shall be taken or injured thereby adequate
compensation therefor, to be determined by the assessment of
five disinterested householders of the city," &c.

Sub-sect. 39 authorizes the mayor and council to borrow
money on the credit of the city, with no other limitation than
that no money shall be borrowed on any contract thereafter
made exceeding $2,000, without the instruction of a majority
of all the votes cast at an election held in the city for that pur-
pose; and sub-sect. 40 authorizes the issue of bonds to fund
any and all indebtedness existing, or subsequently created, due
or to become due.

By these sections, the legislature manifestly contemplated a
lawful acquisition by the city of interests in railroads leading
from or towards it, and authorized municipal legislation in
their favor for the promotion of trade and commerce.    The
thirty-seventh section expressly conferred the power to give to
a railroad company a right of way into or through the city;
authorized the expenditure of money to enable the city thus to
aid the company; and, for the purpose of such aid, empowered
the city to make use of the State's right of eminent domain.
Nothing can be clearer, it appears to us, than that the power
to make a donation of a right of way, or of a site for station-
houses, machine-shops, and other like conveniences, was thus
vested in the mayor and city council.

If we are correct, therefore, it remains only to inquire whether the issue of the bonds held by the plaintiff was within the authority thus conferred on the city.   On the twenty-fifth day of July, 1870, a city ordinance was passed, by which it was ordained, among other things, that a special election should be held in the several wards of the city on the 30th of August next following, for the purpose of submitting to the qualified electors the question of authorizing the mayor and city council to issue bonds in a sum not exceeding $25,000 for the purpose of procuring the right of way for the road of the Missouri, Kansas, and Texas Railway Company, through the corporate limits of the city, and also procuring grounds for dépôts, engine-houses, machine-shops and yard-room, and donating the same to the company.  By the eighth section of the ordinance, it was declared to be the duty of the mayor and council, in case the election should result in favor of the donation, to confer forthwith with the officers of the railroad company, and ascertain at the earliest possible moment the route selected by the company for the line of their road through the corporate limits of the city, and also the ground chosen by them for dépôts and other purposes, and to proceed in such manner as might be deemed most conducive to the interests of the city ; to purchase so much land as might be necessary for the right of way, and also twenty-five acres exclusive of the right of way, at such convenient point within the city as the officers of the railroad company might select, for dépôts, engine-houses, machine-shops and yard-room, and to issue the bonds of the city to an amount not exceeding $25,000 to pay for the same.   The tenth section ordained, that, as the mayor and city councils purchased or procured the right of way and grounds above specified, they should donate or convey the same for a nominal consideration, or cause the same to be donated or conveyed for a nominal consideration, by an indefeasible title in fee-simple to said company ; provided, however, that in their judgment the company had first given evidence of their determination to comply with certain conditions specified in the fourth section of the ordinance.

At the election thus ordered, the proposition submitted was approved by a large majority of the legal voters ; and the case

finds that the railroad company did comply with the conditions mentioned in the ordinance.

Why this action of the city councils and the donation proposed to be made under it were not authorized by the act of the State legislature of Feb. 28, 1868, we are unable to perceive, and the argument submitted to us on behalf of the defendant in error has made no serious attempt to show. Indeed, it may be doubted whether the act of 1868 was called to the attention of the Circuit Court. It has been contended here that another act, passed in 1869, gave no such authority to the mayor and city council; but the argument quite overlooks the grant of powers expressly made by the act of 1868. The act of 1869 authorized the council of any city to subscribe for stock for the city in any railroad company organized under the laws of the State or Territory of Kansas, or to loan the credit of the city to such company upon such conditions as might be prescribed by the city authorities, provided such subscription was previously assented to by a majority of the qualified electors voting at a general or special election; and, in case such an assent was given, the act made it the duty of the city authorities to make the subscription. This act speaks only of subscriptions, and loans of credit; but the act of 1868 contemplated donations.

If, then, the mayor and city council were authorized to make donations of land for the right of way and other privileges to a railroad company, and to expend money for the purpose of acquiring land to be given, and if they were authorized to borrow money to an unlimited extent when instructed so to do by a popular vote, and further to issue bonds to fund any indebtedness of the city, existing or to be created, it is clear they had the power to agree to give upon conditions. We have noticed, that by the ordinance of July 25, 1868, conditions were attached to the proposed gift, — conditions to be performed by the railroad company. It was after this, after the submission of the proposition to the people, and its approval, and after a compliance with its conditions by the company, that the ordinance of Dec. 22, 1870, was passed. Its preamble recites the submission of the proposition to issue the bonds for the purposes mentioned to a popular vote; its approval by a large majority; that the railway company had so far complied with the conditions on

their part to be done and performed as to enable them to demand from the city the right of way and grounds; that in the exercise of this right they had made a proposition to the city to accept the $25,000 of bonds so voted, in lieu of said grounds and right of way, and in full satisfaction and discharge of all the obligation resting on the city in relation thereto; and that, after full and careful consideration, it was deemed advisable to accept the proposition, and issue to the company the bonds.

With such a preamble, the ordinance directed the mayor and city-clerk to execute and deliver to the railroad company bonds to the amount of $25,000 for the avowed purpose of discharging the city's obligation.

The bonds were accordingly issued, and registered in the office of the auditor of the State, who certified upon each that it had been regularly and legally issued, that the signature to it was genuine, and that it had been duly registered in accordance with a statute of the State. The plaintiff then purchased the bonds and coupons before their maturity, without any actual knowledge of the defences set up against them. Indeed, no defence is set up except an alleged want of authority for their issue, — a defence which, in view of the legislation of the State and of the city ordinances, has, in our opinion, no foundation. Certainly it has none, unless a power conferred upon a municipality is different from what the same power would be when possessed by another holder; a doctrine which no one will venture to assert. It follows, that, on the facts found by the Circuit Court, the judgment should have been given for the plaintiff.

*Judgment reversed, and cause remanded for a new trial.*